# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TED BRAILE, | ) |
| Plaintiff, | ) |
| v. | ) No. 04-0818-CV-W-DW |
| FORT DEARBORN LIFE INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

**ORDER**

Before the Court is the Joint Motion for Summary Judgment and Motion *in Limine* (Doc. 28) filed by Defendants Fort Dearborn Life Insurance Company ("FDLIC") and Disability Reinsurance Management Services, Inc. ("DRMS"). The Court previously ruled on the Motion *in Limine*, (Order granting Motion *in Limine*, September 30, 2005, Doc. 36), and now addresses Defendants' Motion for Summary Judgment. Defendants request summary judgment in their favor, and against the Plaintiff, regarding Plaintiff's claim that Defendants improperly denied his claim for long term disability benefits under the terms of an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"). For the following reasons, Defendants' motion for summary judgment is granted.

I.  Background

Argosy, Inc. ("Argosy") provides its employees a welfare benefit plan ("the Plan"). As part of the Plan, Argosy purchased a group insurance policy—Group Long Term Disability Income Insurance Policy No. 106570 ("the Group Policy")—from FDLIC. Through the Group Policy, FDLIC underwrote the Plan's long term disability benefits, and acted as the Plan's claim

administrator. FDLIC contracted with its co-defendant, DRMS, to assist with claims administration.

Plaintiff, Ted Braile ("Braile"), was employed as a blackjack dealer by Argosy Inc.[1] (Argosy) and participated in the Plan. Plaintiff's last day of work was July 16, 1995 and he filed for long term disability benefits on December 15, 1995.

The terms of the Group Policy state that the Plan will pay long term disability benefits to a Plan participant who provides FDLIC with "satisfactory proof" of "total disability." The term "satisfactory proof" is not specifically defined in the policy, but Plainitff does not dispute that it empowers FDLIC with discretion to determine eligibility for benefits under the Plan. "Total disability" is determined based upon the type of employee. Mr. Braile's employment as a blackjack dealer places him within the Group Policy's definition "C" for "total disability."[2]

On May 23, 1996, FDLIC approved Plaintiff's "own occupation" benefit claim and began paying benefits retroactive to October 18, 1995. In mid-1996 Defendants began evaluating

---

[1] Plaintiff was employed by the Argosy Riverside Casino.

[2] The relevant clause in the policy provides:

<u>TOTAL DISABILITY</u> or <u>TOTALLY DISABLED</u> means during the elimination period and the next 24 months of disability you are:

1. unable to perform all of the material and substantial duties of your occupation on a full-time basis because of a disability:

    a. caused by injury or sickness;

    b. that started while you are insured under this coverage; and

2. after 24 months of benefits have been paid, you are unable to perform with reasonable continuity all of the material and substantial duties of your own or any other occupation for which you are or became reasonably fitted by training, education, experience, age and physical and mental capacity.

Plaintiff's continued disability status. As part of this process, Plaintiff furnished FDLIC with attending physician statements in 1996 and continued to provide FDLIC with periodic supplemental statements of disability through 2001. DRMS, co-defendant, became involved in the processing of Plaintiff's benefit claim in June of 2001. Based upon a review of the medical and vocational documentation on file performed by in-house physicians and outside consultants, FDLIC notified Plaintiff on October 3, 2001 that it had determined that Plaintiff was no longer disabled under the Plan and Group Policy and his claim for continued benefits was denied.

On March 27, 2002, DRMS received a letter from Plaintiff requesting an appeal of FDLIC's October determination. In support of his appeal, Plaintiff had two physicians, Dr. Nabih Abdou and Dr. John Campobasso, D.O., send separate letters to FDLIC stating their respective opinions that Braile was totally disabled.[3] DRMS requested and received medical records from Dr. Abdou. Because DRMS found inconsistencies between the objective medical evidence and the opinions of Dr. Abdou and Dr. Jones, it sought additional medical records to substantiate the doctors' opinion. These requests went unanswered. Finally, DRMS spoke with Dr. Jones and Dr. Abdou via telephone and clarified their opinions. Both doctors stated that Mr. Braille was not precluded from sedentary activity. In a letter dated November 4, 2002, DRMS notified Plaintiff that it was upholding its original decision to deny Plaintiff's claim for long term benefits under the Group Policy's "any occupation" definition of "total disability."[4]

---

[3]Although both physicians opined Mr. Braile was totally disabled, they differed as to the appropriate term for re-evaluation: Abdou - one year; Campobasso - at least six months.

[4] As noted earlier, note 2, supra, after the initial 24 months of disability, a claimant is eligible for long term disability benefits only if his condition precludes her from performing *any* occupation for which he might be reasonably qualified.

3

On August 26, 2004, Plaintiff filed state-law claims against FDLIC and DRMS seeking payment of "any occupation" long term disability benefits under the Plan and Group Policy. On September 10, 2004, Defendants removed the case to this Court based on ERISA jurisdiction. Plaintiff does not challenge the jurisdiction of this Court or that ERISA governs the resolution of his claim.

II.     Analysis

Summary judgment is proper if, drawing all the reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322. The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000). The nonmoving party must show through presentation of admissable evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

        1.      Standard of Review

ERISA governs the Plan and controls the resolution of Plaintiff's benefit claim. When reviewing an ERISA case, a court must determine the applicable standard of review. The applicable standard of review turns, in part, on the Plan's language. When an ERISA plan gives the administrator "discretionary authority to determine eligibility for benefits," the Court reviews the administrator's decision for abuse of discretion. Firestone Rubber & Tire Co. v. Bruch, 489 U.S. 101, 115 (1989)(limiting applicability of this standard of review to plans giving the administrator

4

discretionary authority; otherwise a *de novo* standard applies.); Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998). This deferential standard of review is altered only if a claimant presents "material, probative evidence demonstrating (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." Woo, 144 F.3d at 1160. When a heightened standard of review applies, the evidence supporting the benefits decision must increase in proportion to the seriousness of the conflict or procedural irregularity—the so-called "sliding scale" standard. Id. at 1162.

For "sliding-scale" review to apply, a beneficiary claiming procedural irregularities must show that the plan administrator, in the exercise of its power, acted dishonestly, acted from an improper motive, or failed to use judgment in reaching its decision. Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996). The alleged irregularities "must have some connection to the substantive decision reached," such that they leave a reviewing court with "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim," or demonstrate that "the actual decision was reached without reflection and judgment." Id. at 900-01. Finally, the beneficiary must also demonstrate that the procedural irregularities "caused a serious breach of the trustee's fiduciary duty to the plan beneficiary." Id. at 900.

Plaintiff does not challenge whether the Plan gives discretionary authority to the plan administrator to determine eligibility for benefits. However, Plaintiff argues that the Court should engage in a heightened standard of review of the denial of benefits determination because of serious procedural irregularities. Defendant denies any procedural irregularity in its benefits determination and argues that the abuse of discretion standard of review is applicable.

5

Plaintiff asserts the following procedural irregularities: (1) reliance on medical data submitted by Dr. Cameron Jones who had treated the Plaintiff only one time, (2) exclusion of medical opinions based upon the dates of treatment; (3) repeated changes to the cutoff date for medical evidence relevant to the eligibility decision; (4) failure to give proper weight to submitted objective and subjective evidence indicating "any occupation" disability; (5) "ignoring" the June 1999, February 2000 and August 2000 opinions of Dr. Dean indicating "any occupation" disability; (6) denying Plaintiff's claim without securing additional records from Dr. Jones and Dr. Dean, despite informing Plaintiff of the need to acquire such records; (7) failing to secure the records of Dr. Raybould despite informing Plaintiff of their importance and relevance to the benefits determination; (8) made final determination prior to receipt of executed letters from Dr. Abdou and Jones describing the contents of phone calls with each doctor by Dr. Hogan; and (9) reliance upon the *absence* of medical evidence prohibiting employment.

Plaintiff's alleged procedural irregularities (1), (4), (5), (8), and (9) are not procedural in nature and the Court will disregard them for purposes of determining the applicable standard of review.[5]  However, the Court will closely examine allegations (2), (3), (6) and (7).

Contentions (2) and (3) allege that Defendants arbitrarily excluded certain evidence from consideration in their "any occupation" eligibility decision.  In support of his contention of procedural irregularity, Plaintiff directs the Court's attention to Pralutsky v. Metropolitan Life Ins.

---

[5] Relying on Fordyce v. Life Insr. Co. of N. Am., 340 F. Supp. 2d 994 (D. Minn. 2004), Plaintiff argues that a plan administrator's decision to "ignore isolate, and narrowly interpret the medical findings favorable to [plaintiff] " is unreasonable and an abuse of discretion.  The Court notes that the district court of Minnesota did not rely on the administrator's misconduct as a basis to find a higher standard of review was applicable, only that the decision itself was unreasonable under the abuse of discretion standard.  This case does not support Plaintiff's argument.

6

Co., where the district court found a procedural irregularity where a plan administrator denied benefits because the beneficiary failed to submit "objective" medical evidence in support of her claim when the plan did not expressly create such a requirement. 316 F. Supp. 2d 840 (D. Minn. 2004). The Pralutsky court determined the plan administrator abused its discretion to by summarily denying benefits without considering claimant's subjective evidence of disability. Id. Unlike Pralutsky, the administrative record in the present case contains no evidence that Defendants imposed any unauthorized requirements or restrictions upon the medical evidence considered in its benefits determination. First, the decision here was made from a record containing both objective and subjective medical evidence related to Braile's claims. There is no evidence in the record to suggest that Defendants ignored, excluded or otherwise failed to consider Plaintiff's subjective evidence of disability.

Second, Plaintiff's contends that it was improper for Defendants to focus on medical evidence after October 1997. To establish a right to long term disability benefits, the Plan required proof of "any occupation" disability. This standard became applicable in October 1997. Although medical evidence of Plaintiff's disability status prior to October 1997 may have some relevance to his disability status after October 1997, the Court cannot agree that Defendants' emphasis on medical documentation related to Plaintiff's disability status after October 1997 amounts to a procedural irregularity. Common sense dictates that post-1997 evidence of disability is more relevant to Plaintiff's condition in 2001, the time of the eligibility determination. Plaintiff has failed to convince the Court that evaluating the relevant medical evidence in light of the dates of treatment is an arbitrary restriction without authorization in the Plan.

Plaintiff's claims of procedural irregularities (6) and (7) are allegations that Defendants failed

7

to obtain certain medical records prior to a final denial of benefits. Generally, a plan administrator's failure to obtain and consider relevant medical evidence can amount to a serious procedural irregularity. In Harden v. American Express Financial, MetLife, the plan administrator, had requested from claimant medical releases to obtain social security records supporting his grant of benefits by the Social Security Administration. The court found MetLife's failure to obtain and consider claimant's Social Security records amounted to a serious procedural irregularity indicating MetLife had purposefully limited the administrative record to evidence supporting their decision to deny benefits. 384 F.3d 498, 500 (8th Cir. 2004). However, where the failure to obtain records does not indicate an attempt by the administrator to exclude unfavorable evidence, there is no procedural irregularity. See Clapp v. Citibank, N.A. Disab. Plan, 262 F.3d 820, 828 (8th Cir. 2001)(finding no procedural irregularity where the plan administrator attempted, but ultimately failed, to obtain information from claimant's treating physician). Furthermore, ERISA does not require a plan administrator, on its own initiative, to "develop the record" as though the administrator were an administrative law judge in the Social Security Administration. Cf. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

      The administrative record in this case resembles the facts in Clapp, while Harden is easily distinguished. The record shows that Defendants' repeated requests for supporting records went unanswered. Ultimately, Defendants were successful in reaching Dr. Jones and Dr. Abdou by telephone and discussed the remaining questions at that time. Defendants procured signed letters from these physicians summarizing the substance of these calls and confirming their opinions that Plaintiff was not precluded from sedentary activity. The Court finds that Defendants acted reasonably by making their determination without receiving other additional records that Plaintiff's

8

Case 4:04-cv-00818-DW   Document 40   Filed 10/11/05   Page 8 of 12

physicians failed to provide despite repeated requests by Defendants.

Plaintiff also argues that Defendants' reliance on in-house physicians indicates that the decision was made "without reflection and judgment" under Woo. The Court finds Defendants' conduct here distinguishable from the conduct of the plan administrator in Woo. In that case, there was evidence from two treating physicians that the plaintiff was disabled from Scleroderma and that she had been disabled for some time. The plan administrator used an in-house medical consultant to review the plaintiff's claim and denied benefits. The Eighth Circuit held that the defendant "failed to use proper judgment by not having a Scleroderma expert review [Ms. Woo's] claim." Woo, 144 F.3d at 1161. Unlike Woo, the evidence in record supporting Defendants' decision is not limited to the opinions of their in-house or hired consultants. As noted above, Plaintiff's own physicians opined that he was not precluded from sedentary activity.

The Court finds that Plaintiff has not shown evidence satisfying Buttram and therefore the "sliding-scale" standard of review is inappropriate. The Court will review the benefits determination under the deferential abuse of discretion standard.

   2.   Abuse of Discretion

Because the Court reviews Defendants' decision under an abuse of discretion[6] standard, it must affirm if a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997) (internal quotation omitted). In evaluating reasonableness, the Court determines whether the decision is supported by substantial

---

[6] Although the case law varies in reference to an "abuse of discretion" or an "arbitrary and capricious" standard, the Eighth Circuit Court of Appeals has found these standards to be interchangeable in ERISA cases. Sahulka v. Lucent Tech., 206 F.3d 763, 766 (8th Cir. 2000).

9

evidence—described as more than a scintilla, but less than a preponderance. Woo, 144 F.3d at 1162. In doing so, the Court must consider "both the quantity and quality of the evidence." Delta Family-Care Diability and Survivorship Plan v. Marshall, 258 F.3d 834, 842 (8th Cir. 2001). Finally, the Court considers only the evidence that was before the plan administrator when the decision to deny continuing benefits was made and does not substitute its own weighing of the evidence for that of the administrator. See Cash, 107 F.3d at 641.

The Court's review is further constrained because ERISA does not require the plan administrator to accord special deference to the opinions of treating physicians, or impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). And as noted above, the plan administrator has no duty to "develop the record." Cf. Hildebrand v. Barnhart, 302 F.3d at 838.

Generally, when the medical opinions conflict in the record, it is a permissible exercise of discretion for the plan administrator to adopt any opinion supported by the record. See, e.g., Birdsell v. UPS, 94 F.3d 1130, 1133 (8th Cir. 1996)(holding that decision is not arbitrary or capricious where administrator adopted one of two competing views). And, where the conflict of opinion is between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to find that the employee is not disabled unless "the administrative decision lacks support in the record, or ... the evidence in support of the decision does not ring true and is ... overwhelmed by contrary evidence." Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996); compare Barnhart v. UNUM Life Ins. Co. of America, 179 F.3d 583, 589 (8th Cir. 1999) (holding that administrator may reach a decision contrary to the plaintiff's medical evaluators when it based its decision on substantial evidence in the record and it does not raise doubts in the mind of

the court that the decision was arbitrary or capricious).

Informed by these legal principles, the Court finds Defendants' decision is supported by substantial evidence in the record and therefore Defendants acted within their discretion in denying Plaintiff long term disability benefits under the Plan. Certain facts are central to the Court's finding that the plan administrator acted reasonably.

According to the vocational evaluation report by Research Service Bureau, Inc., in September 1996, Plaintiff's current activities included driving a car, grocery shopping, running errands, daily walks, visiting friends and meal preparation. (AR00634.) In the November 20 1996 Supplemental Attending Physician ("AP") Statement, Dr. Reisz opined that Plaintiff experienced light to moderate limitation of functional capacity and was capable of light or administrative/clerical work. (AR00576.) In the July 6, 2001 Supplemental AP Statement, Dr. Jones also opined that Plaintiff was capable of "clerical/administrative (sedentary) activity." (AR00507-09.) On August 22, 2001, Sarah Lawsure, RN, reviewed and concurred with the AP Statement from Dr. Jones. (AR00503.) On September 5, 2001, Lisa Bossardt, a vocational rehabilitation consultant with Vocational Alternatives, Inc, reviewed the medical and vocational documents on file and determined that there were numerous vocational alternatives for which Plaintiff was qualified. (AR00494-500.) A DRMS analyst and Donald Abbott, M.D., a medical consultant, reviewed Dr. Abdou's medical documents on file and advised DRMS to ask Dr. Abdou to review and comment upon the vocational analysis performed by Ms. Bossardt. (AR00429-39.) Dr. Abdou did not directly address the vocational analysis and simply stated that he did not believe Plaintiff "is capable of doing any of [sic] work he is qualified to perform at the present time." (AR00415.) Because other medical evidence in the file conflicted with Dr. Abdou's opinion, Defendants made several attempts to obtain "office

notes, consultative reports, and test results" that provided the basis of the medical opinions supporting Plaintiff's claims. These requests were made to each of the known physicians who had treated Plaintiff for the conditions he claims contribute to his disability. Finally, in telephone calls with DRMS's Dr. Hogan, Dr. Jones and Dr. Abdou both agreed that Plaintiff had sedentary work capacity and ultimately signed and returned confirmation letters sent by Defendants. (AR00306-7; AR00286-7.) Based upon these letters and review of the supporting records received, Defendants determined that Plaintiff's conditions did not preclude sedentary work capacity. As such, the original decision to deny benefits was upheld.

The Court notes, as does the Defendant, that in addition to evidence supporting Defendants' decision, there is conflicting medical evidence to be found in the record. However, looking at the record as a whole, the Court finds that Defendants' decision to deny long term disability benefits is supported by substantial evidence and this is not a case where the plan administrator's decision is "overwhelmed by contrary evidence."

III. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment.

IT IS SO ORDERED.

/s/ DEAN WHIPPLE
Dean Whipple
United States District Court

Date:   October 11, 2005